United States District Court
Middle District of Florida
Tampa Division

**FRANK MALDONADO,**

   *Plaintiff,*

v.                                                                          **NO. 8:19-cv-1077-J-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

   *Defendant.*

---

# Order

Frank Maldonado stopped working on December 5, 2012.[1] Tr. 271. He applied for disability insurance benefits on November 6, 2015, claiming he had become disabled on July 20, 2013, at age 46, because of screws in his right hand and both knees, a cervical back injury, arthritis in his knees and back, burning mouth syndrome, diabetes, and PTSD. Tr. 51, 97, 270. He failed at all levels of the administrative process. Tr. 1–8, 14–39, 111, 136–37. Proceeding under 42 U.S.C. § 405(g), he now seeks review of the final agency decision, which is a decision by an administrative law judge ("ALJ") dated August 29, 2018. Doc. 1. The law and the record are summarized in the ALJ's decision, Tr. 17–33, and the parties' briefs, Docs. 24, 25, and not fully repeated here.

## I.    Arguments

Maldonado argues (1) the ALJ's finding concerning his residual functional capacity ("RFC") is not supported by substantial evidence, (2) the ALJ's finding

---

[1]Maldonado worked for six weeks in 2015 in what his lawyer said was "a failed work attempt." Tr. 49.

concerning his subjective complaints is not supported by substantial evidence, and (3) the ALJ erred in her consideration of opinions of Dr. Charles Nalley and Dr. John Marquardt. Doc. 24 at 18–28.

## II.    Standard

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

The Court is without authority to reweigh evidence, make a credibility determination, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Even if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).

## III.    ALJ's Decision

The ALJ considered the period between July 20, 2013 (the alleged onset date), and December 31, 2016 (the date last insured).[2] Tr. 17, 19, 33.

The ALJ found Maldonado had had severe impairments of "osteoarthritis, multiple joints including ankles, knees, hips, shoulders, elbows, wrists; status post

---

[2]For disability insurance benefits, a claimant must show disability by the date last insured. 42 U.S.C. § 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131.

left first toe amputation; rheumatoid arthritis; degenerative disc disease, cervical and lumbar spine; [and] obesity." Tr. 20.

The ALJ found Maldonado had had several non-severe impairments, including diabetes, PTSD, anxiety, and depression. Tr. 20. The ALJ found his diabetes had resolved through diet and weight loss, and his mental impairments considered singly or together had caused no more than minimal limitation in his ability to perform mental work activities. Tr. 20–22.

The ALJ found Maldonado had had no impairment or combination of impairments that meets or equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 23–24.

The ALJ found Maldonado had had the RFC to perform sedentary work ("lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a)) with additional limitations:

> The claimant could occasionally push and pull with the bilateral lower extremities, and could frequently push and pull with the bilateral upper extremities. The claimant could occasionally perform postural activity, except he could never climb ladders, ropes, or scaffolds, or crawl. The claimant could frequently handle with the left hand and could frequently finger bilaterally. However, the claimant could no more than occasionally perform jobs requiring keyboarding. The claimant could reach overhead with the right upper extremity occasionally, and with the left upper extremity frequently. The claimant could have no more than occasional exposure to extreme cold, humidity, vibration, and workplace hazards, such as unprotected heights and moving machinery. Beginning in November 2014, the claimant required an assistive device to ambulate.

Tr. 24.

The ALJ mirrored the RFC in a hypothetical to a vocational expert. Tr. 82–86. The expert opined someone with Maldonado's characteristics and that RFC could not

perform Maldonado's past relevant work as a liquor-store manager, security guard, bus driver, concrete-mixing-truck driver, or department manager but could perform jobs that exist in significant numbers in the national economy such as document preparer, microfilming; call-out operator; and charge-account clerk. Tr. 30, 82–86. The expert explained the essential functions of those jobs would be performed while sitting, and standing and walking would have no significant impact on the overall ability to perform them. Tr. 86–87.

Based on the vocational expert's testimony, the ALJ found Maldonado had been unable to perform his past relevant work, Tr. 30, but could perform jobs that exist in significant numbers in the national economy, Tr. 31. The ALJ therefore found no disability from July 20, 2013, to December 31, 2016. Tr. 33.

## IV.   Law and Analysis

Disability is the inability to do any substantial and gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or last twelve or more continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The claimant has the burden of proving disability. *Moore*, 405 F.3d at 1211.

### A.   *The ALJ's RFC finding is supported by substantial evidence.*

Maldonado argues the ALJ's RFC finding is not supported by substantial evidence because it has insufficient limitations to account for his left-hand impairment, it fails to include his need to use a cane to walk and stand or a motorized wheelchair for distance, and it fails to include any limitation to account for his depression, anxiety, and PTSD. Doc. 24 at 18–25. He adds the matching hypothetical to the vocational expert also did not account for his impairments. Doc. 24 at 18, 19, 22–23.

4

A claimant's RFC is the most he can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine an RFC finding. *Moore*, 405 F.3d at 1213 n.6. An ALJ need not defer to an opinion concerning the RFC. 20 C.F.R. § 404.1527(d)(3).

At step five, an ALJ must decide whether a significant number of one or more jobs that the claimant can perform exist in the national economy. 20 C.F.R. § 404.1566(b). An ALJ may use a vocational expert's testimony for that determination. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). For a vocational expert's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes all of the claimant's impairments. *Id.* An ALJ is "not required to include findings in the hypothetical that he had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.

Here, the ALJ found a restrictive RFC that limited Maldonado to sedentary work with numerous other limitations. Tr. 24. Contrary to Maldonado's argument, substantial evidence—i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—supports the RFC.

Concerning Maldonado's left-hand impairment, Maldonado complained about his left wrist and hand for the first time nearly two years after the July 2013 alleged onset date, stating it had begun two months prior. Tr. 561, 565. In appointments in October 2015 and February and December 2016, he had mild swelling and tenderness but full range of motion, mostly full strength, and no atrophy. Tr. 590, 608, 736, 772, 952, 1364, 1399, 1157–58. In February 2016, he had good finger motion. Tr. 772, 1197. During the pertinent period, he could take care of himself, drive a car and a motorcycle, perform some light household chores, and grocery shop. Tr. 280–83. After his date last insured, he had normal sensation and 5 out of 5 strength in his wrists and upper extremities. Tr. 1559–60. He expressed concern about his ability to type. Tr. 867. The RFC limits him to frequent fingering or handling and occasional

"keyboarding." Tr. 24. That evidence is substantial evidence to support no more restrictive limitations.

Concerning Maldonado's need to use a cane to walk and stand or a motorized wheelchair for distance, in August 2013, he complained about pain in his left big toe. Tr. 417. He had limited range of motion but full strength. Tr. 415–17. In January 2014, he had adequate range of motion, full strength, and no pain on compression. Tr. 389, 670. His hemi-implant was intact and in a good position, and he had no fractures or dislocations. Tr. 389. In October 2015, at an appointment, he could ambulate without an assistive device. Tr. 606–07. That month, he was prescribed a CAM walker because he had had his left big toe amputated. Tr. 561, 603. In December 2015, he was instructed to discontinue its use, and his treatment providers did not prescribe or believe he needed a scooter. Tr. 561, 566–67, 577–78, 580, 608. A physical therapist encouraged him to walk as much as possible and exercise. Tr. 609. He otherwise had full range of motion and full strength in his lower extremities. Tr. 590, 608. He had normal gait and could ambulate 150 feet independently. Tr. 607–08. In January 2016, he reported using only a cane or brace, and in February and March 2016, he either reported walking mostly without pain or was observed walking without an assistive device. Tr. 285, 733, 765, 1188–89. In September 2016, Dr. Marquardt performed a right knee arthroscopy, recommended ibuprofen for pain management, and prescribed aquatic exercise for physical therapy. Tr. 868, 887. In December 2016, he had full range of motion, no tenderness, no swelling, and no crepitus. Tr. 1364. In November 2016, at an appointment, he could ambulate without an assistive device. Tr. 852. And in May 2018—after his date last insured—he had a normal gait with a cane, he had no atrophy in his lower extremity, and he could stand on his heels and on one leg. Tr. 1559–61. The RFC limits him to sedentary work with occasional postural activity, no climbing, no crawling, and an assistive device to ambulate beginning in November 2014. Tr. 24. The vocational expert explained the essential functions of the jobs identified as jobs Maldonado could do would be done sitting, and standing and walking would have no significant impact on the overall

ability to perform them. Tr. 86–87. That evidence is substantial evidence to support no more restrictive limitations.

Maldonado argues surgeries requiring recoveries using a walker and a wheelchair would have rendered him disabled, pointing to surgeries on his foot on May 16, 2014; November 14, 2014; and October 23, 2015, and knee surgery on September 19, 2016 (Maldonado says on the left knee but it was on the right, Tr. 887). Doc. 24 at 20–22. He fails, however, to show the surgeries and recoveries, singularly or in combination, would have prevented him from working for twelve or more continuous months. *See* 42 U.S.C. § 423(d)(1)(A) (definition of disability); 20 C.F.R. § 404.1505(a) (disability).

Concerning Maldonado's depression, anxiety, and PTSD, the ALJ explained:

> The claimant has received psychiatric treatment since approximately 2011 for depressive disorder, anxiety, and PTSD as a result of his experiences in the military as a Marine; most significantly involving the loss of his entire platoon in a plane crash, which the claimant would have been on but for his medical conditions affecting his ability to actively participate at that time. The claimant's psychiatry records shortly after his relocation to Florida in 2013 note complaints of poor anger management, poor sleep due to pain, obstructive sleep apnea, and nightmares, disconnecting from people, and poor memory. (Exhibit B2F) During his care, the claimant's treatment records note that he reportedly had a good response to psychopharmacologic treatment with a decrease in anxiety, depression, irritability, and nightmares, but still has difficulty with insomnia and flashbacks. (Exhibits B2F, B3F) As of November 2015, the claimant reported his mood had been fairly stable despite some brief episodes of feeling down and some intermittent awakenings at night, but overall he reported being able to get enough sleep to feel fairly rested during the day. At the claimant's November 2015 office visit, the claimant's mental status examination was unremarkable, and his psychiatrist noted he had improved significantly as far as his mood was concerned since his initial visit with this particular provider in March 2014. (Exhibit B3F) The claimant reported an increase in his anger around March 2016, felt to be related to the anniversary of his past trauma, but improvement in his sleep and reduced frequency of his nightmares. (Exhibit Bl2F) At a psychosocial assessment done in June 2016, the claimant reported feeling distant or

cut off from other people and having little interest or pleasure in doing things, but again declined help from the PTSD clinic. (Exhibit Bl2F)

Tr. 21. The ALJ found Maldonado had had only mild limitations in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting and managing oneself. Tr. 21–22. The ALJ explained:

> The first functional area is understanding, remembering, or applying information. In this area, the claimant had a mild limitation. In his function report, the claimant alleged that he had limitations in his ability to concentrate, but attributed his ability to pay attention to whether he could stand and sit. He reported following spoken instructions well. (Exhibit B4E) At his initial psychiatry visit upon relocating to Florida in 2013, the claimant reported having problems with his memory, and was noted to have mildly impaired short-term memory on examination, as he was able to recall two of three words after one minute, and two of three words after five minutes. (Exhibit B2F) During his treatment in 2015, the claimant was able to finish a degree program, despite at times being worried that he would not be able to do so. The claimant's mental status examinations contained in the file document appropriate behavior, and good/intact insight and judgment, and his memory and cognition appeared to be grossly intact. (e.g. Exhibits B3F, Bl2F) When the claimant was considering having his left first toe amputated, his psychiatrist noted that the claimant appeared to fully understand the risks and benefits associated with the options available to him, and was fully capable of making his own decision as to how he wanted to proceed. (Exhibit B4F) …
>
> The next functional area is interacting with others. In this area, the claimant had a mild limitation. In his function report, the claimant reported problems getting along with family, friends, neighbors, and others, indicating that he could see right through everyone's "bull and lies." At that time, the claimant reported trying to talk to someone daily, often over the phone or computer, and was able to go shopping and drive a car and motorcycle. (Exhibit B4E) At his initial psychiatry visit upon relocating to Florida in 2013, the claimant reported disconnecting from people and being easily irritated and angered, even by his family. (e.g. Exhibit B2F) The claimant ultimately reported a good response to psychopharmacologic treatment with a decrease in irritability, among other symptoms, with an increase in symptoms around the anniversary of his past trauma. (e.g. Exhibits B2F, Bl2F) …

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant had a mild limitation. In his function report, the claimant reported difficulty concentrating, but indicated his ability to concentrate would be affected by his ability to sit/stand, concerning his pain symptoms. (Exhibit B4E) At his initial psychiatry visit upon relocating to Florida in 2013, the claimant denied problems with concentration; with no significant concentration deficits noted during the claimant's care. (Exhibit B2F) Again, the claimant successfully completed his degree program while receiving mental health treatment in 2015. (Exhibit B3F) The claimant was reportedly able to ride a motorcycle and manage his personal finances, and reported being able to follow spoken instructions well. (Exhibit B4E) …

The fourth functional area is adapting or managing oneself. In this area, the claimant had a mild limitation. In his function report, the claimant reported having some difficulty handling stress due to distrust of people, but that he could still handle it. The claimant also reported fear of airplanes after his military service and loss of his platoon in a plane crash. (Exhibit B4E) The claimant has a history of poor anger management, nightmares, and flashbacks, but reported a good response to psychopharmacologic treatment with a decrease in anxiety, depression, irritability, and nightmares. The claimant was able to complete a degree program and described his mood as stable with only brief periods of feeling blue as of November 2015. (Exhibits B2F, B3F) The claimant is able to help care for his young child, born March 2016, and can attend to his personal care needs, manage his personal finances, grocery shop, go out independently and drive a car or motorcycle, and perform light household chores. (e.g. Exhibits B4E, B5E, B8E, Hearing testimony)[.]

Tr. 21–22. In making these findings, the ALJ gave "great weight" to state agency psychologists Dr. Thomas Conger and Dr. Barbara Lewis who opined he has no more than mild limitations in functioning due to mental impairments. Tr. 22. The ALJ also gave "some weight" to global assessment of functioning ratings ranging from 50 to 65, observing that a rating of 61 to 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning but generally "functioning pretty well." Tr. 22–23.

The ALJ found Maldonado suffers no severe mental impairment and included no limitation in the RFC to address mental impairments. *See generally* Tr. 20, 24.

The evidence summarized by the ALJ is substantial evidence to support no work-related mental limitations.[3]

Maldonado points to evidence that arguably could have supported a more restrictive RFC. Doc. 24 at 19–25. But this Court is without authority to reweigh evidence, make a credibility determination, or substitute its judgment for the Commissioner's judgment. *See Moore*, 405 F.3d at 1211. Because substantial evidence supports the ALJ's RFC findings, this Court must affirm even if the evidence preponderates against them. *See Crawford*, 363 F.3d at 1158–59. And because substantial evidence supports the limitations, the ALJ was not required to include other limitations in the hypothetical to the vocational expert. Remand to reconsider the RFC finding is unwarranted.

## B. *The ALJ's finding concerning Maldonado's subjective complaints is supported by substantial evidence.*

Maldonado argues the ALJ's finding concerning his subjective complaints is not supported by substantial evidence. Doc. 24 at 25–27.

---

[3]In a discussion of mental limitations and the RFC, Maldonado states, "Failing to properly consider the mental health records and failing to state what weight [the ALJ] gave to them was error." Doc. 24 at 24. Maldonado identifies no mental-health opinions the ALJ should have but did not weigh. To the extent he means the VA disability rating of 70 percent for PTSD, discussed before that statement, Doc. 24 at 22–23, Maldonado has shown no error. The ALJ gave "some weight" to the VA's overall 90 to 100 percent disability rating for all impairments, finding the evidence supported significant but not preclusive work limitations. Tr. 30.

As the Eleventh Circuit recently explained in a published decision, "[A reviewing court] must ask whether the ALJ's decision shows that she considered the other agency's decision. [If not,] the case must be remanded to the Commissioner for consideration of the other agency's decision. But if the ALJ discussed the other agency's decision, the court moves on to the second step of the analysis: whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision. If there is substantial evidence in the record, then the ALJ's decision should be affirmed." *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020). Substantial evidence supports the ALJ's decision here for the reasons discussed.

To determine disability, the Social Security Administration ("SSA") considers pain and the extent to which the pain "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Statements about pain alone cannot establish disability. *Id.* § 404.1529(a), (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the pain" and, when considered with the other evidence, would lead to a finding of disability. *Id.* § 404.1529(a), (b).

The finding that an impairment could reasonably be expected to produce the pain does not involve a finding on the intensity, persistence, or functionally limiting effects of the pain. *Id.* § 404.1529(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the pain affects the claimant. *Id.* § 404.1529(a), (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to pain . . . can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the pain affects the ability to work. *Id.* § 404.1529(a).

Factors relevant to pain include: daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the pain; treatment for the pain other than medication; and measures used to relieve the pain. *Id.* § 404.1529(c)(3).

To determine the extent to which pain affects a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the pain; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* § 404.1529(c)(4).

11

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony about pain.[4] *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated pain finding supported by substantial evidence. *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir 2014).

Maldonado testified he is college-educated, married, and has a two-year-old son, born in March 2016. Tr. 52–54. He watched his son for nearly a year-and-a-half with help from his in-laws and his wife who works from home, but he was unable to chase his son, and his son eventually started attending daycare. Tr. 52–54, 76–78. Day-to-day, he usually wakes up around 5:00 a.m., watches television, makes coffee, and gets on the computer, reads a book, or stares outside. Tr. 75. He can drive. Tr. 53.

Maldonado testified he has had two surgeries on his right knee, the first in 1999 and the second—arthroscopic surgery—in September 2016. Tr. 65. He wears a brace to take the weight and pressure off his right knee. Tr. 66. Since the onset date or before, he has had shooting and stabbing pains in both knees that are worsening; lower-back issues that are worsening; headaches, arm numbness, and shoulder pain relating to neck issues; and neck pain when he moves his head up and down. Tr. 59–60, 66–67. To address left wrist and right shoulder issues, he underwent physical therapy. Tr. 60–61. He sleeps only two to four hours daily. Tr. 75. Bending in certain ways throws his back out. Tr. 73–74. He cannot lift more than 15 pounds. Tr. 74, 76.

---

[4]Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* at *2. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Because the ALJ here issued her decision on August 29, 2018, Tr. 33, the new SSR applies. *Cf. Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding new SSR did not apply because ALJ issued decision before SSR's effective date).

When he filed his application, he could stand for no more than 30 or 40 minutes before he had to sit down, but sitting also was limited. Tr. 74.

Maldonado testified he has had five surgeries on his left foot since 2002 or 2003: the first to "clean up some of the arthritis," the second to remove a bone spur, the third to do a "hemi implant," the fourth to perform a fusion, and the fifth to amputate his toe. Tr. 61–62. The final surgery—in October 2015—"somewhat" resolved his symptoms, but he now must wear an insert or he will walk funny and lose his balance, the scar area is sensitive, and he experiences phantom pain where his toe used to be. Tr. 63. He wore a boot between foot surgeries but stopped wearing the boot in January 2016. Tr. 63. He was prescribed a CAM walker with two wheels in November 2014 and continues to use it for long distances and a cane for short distances. Tr. 64, 74–75, 77.

Maldonado testified that when he served in the military, he did not serve overseas, but he went to Japan, and he has flashbacks and nightmares that affect his concentration. Tr. 70–73. He started medicine for PTSD, depression, and insomnia in 2011. Tr. 70–71. He continues to use the medication, and it helps with anger issues but not with sleep issues, and the dosages continue to be increased. Tr. 71.

The ALJ found Maldonado's "statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 28. The ALJ explained:

> The record does document a history of arthritic pain throughout the claimant's joints and spine, as well as recurrent knee and foot problems, for which the claimant has received ongoing treatment with limited reported relief. However, the claimant's allegations of disabling neck and back pain in particular prior to the date last insured are not well supported by the record. While I can appreciate some difficulty in obtaining care through the Veterans' Affairs healthcare system, the record reflects that the claimant was able to request care and treat consistently for various conditions and underwent several surgeries between the alleged onset date and date last insured without any apparent delay. Neck and back pain is documented early on in the

13

claimant's treatment, prior to alleged onset date, and a history of chronic pain is mentioned throughout the record in the claimant's medical history and in his request for authorization of a motorized scooter in October 2015, which I note was denied. (Exhibit B3F) Otherwise, his care prior to the date last insured focused primarily on his hands, feet, and knees. As to the claimant's knees, I note that even after the date last insured, only mild degenerative changes were observed in imaging. (e.g. Exhibit Bl8F) The claimant was using a motorized scooter at the hearing; however, this was not prescribed to him prior to the date last insured. I also note that as of January 2016, the claimant reported using a cane for amputation; but not a walker, wheelchair, or scooter. (Exhibit B4E) Although the claimant alleged significant pain and limitations as a result of his various impairments, the claimant has remained able to attend to his personal care needs, drive a car and motorcycle, perform light household chores, and go grocery shopping, even after his left first toe amputation in October 2015. (e.g. Exhibit B4E) While the record does document several severe impairments that warrant limiting the claimant to a reduced range of sedentary work activity as discussed above, greater limitations are not supported by the record evidence.

After careful review and consideration of the evidence including the medical evidence of record and the claimant's allegations, I find that the record does support that the claimant had chronic pain and functional limitations due to acute and degenerative impairments involving his neck, back, and joints, prior to the date last insured that limited him to less than the full range of sedentary exertional work. Because of the claimant's low back, hip, knee, ankle, and foot pain, as well as the residual effects of his left first toe amputation, the claimant was limited to occasional pushing and pulling with the bilateral lower extremities. Because of the claimant's arthritic pain in his upper extremities, including his shoulders, wrists, and fingers, the claimant was limited to frequent pushing and pulling with the bilateral upper extremities. Additionally, because of the claimant's upper extremity symptoms, including his past hand surgery and findings of tenosynovitis in the left hand, the claimant was limited to frequent handling with the left upper extremity and frequent fingering, bilaterally; and could no more than occasionally perform jobs requiring keyboarding. Because of the claimant's neck and shoulder pain, the claimant was limited to occasional reaching with the right upper extremity and frequent reaching with the left upper extremity. Because of the claimant's widespread pain, particularly in his neck, back, and knees, coupled with his instability due to his left first toe amputation and medication use, the claimant could only occasional[ly] perform postural activities but could never climb ladders, ropes or scaffolds and could never crawl. In

order to avoid exacerbation of the claimant's musculoskeletal pain and headaches, and as a safety precaution due to the claimant's medication use and alleged instability, the claimant could have no more than occasional exposure to extreme cold, humidity, vibration, and workplace hazards. Because of the claimant's left first toe amputation, the claimant required an assistive device to ambulate beginning in November 2014.

Tr. 28–29.

The ALJ thus agreed Maldonado has chronic pain and functional limitations due to acute and degenerative impairments limiting him to less than the full range of sedentary exertional work, and in this regard the ALJ credited much of Maldonado's testimony, just not to the extent he claimed total disability or limitations beyond the RFC. The ALJ clearly articulated pain findings supported by substantial evidence—the evidence supporting the RFC and described by the ALJ—leaving the Court with no basis for reversal. *See Mitchell*, 771 F.3d at 782. Remand to reconsider Maldonado's subjective complaints is unwarranted.

## C.    *The ALJ did not err in her consideration of treating opinions.*

Maldonado argues the ALJ erred in her consideration of Dr. Nalley's and Dr. Marquardt's opinions. Doc. 24 at 27–28.

The SSA evaluates every medical opinion it receives. 20 C.F.R. § 404.1527(c). Generally, the SSA gives "more weight" to a medical opinion from a treating source because the treating source is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture" of the claimant's medical impairment and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."[5] *Id.* § 404.1527(c)(2). If the

---

[5]"For claims filed … before March 27, 2017, the rules in [20 C.F.R. § 404.1527] apply. For claims filed on or after March 27, 2017, the rules in [§ 404.1520(c)] apply." 20 C.F.R. § 404.1527. Because Maldonado filed his claim for disability insurance benefits before March 27, 2017, the rules in § 404.1527 apply here.

SSA finds the treating source's medical opinion on the nature and severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the SSA will give the opinion "controlling weight." *Id.* § 404.1527(c)(2).

The SSA must "give good reasons" in its decision for the weight it gives a treating source's medical opinion. *Id.* § 404.1527(c)(2). If the SSA does not give a treating source's medical opinion controlling weight, it will consider the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factors that tend to support or contradict the opinion. *Id.* § 404.1527(c).

A medical source opinion on a dispositive issue reserved to the Commissioner— such as a claimant's RFC or whether he is disabled—is not a medical opinion and not entitled to "any special significant." *Id.* § 404.1527(d).

Dr. Nalley treated Maldonado and completed two medical source statements in March and April 2018, respectively. Tr. 1547–57. In the first, Dr. Nalley listed diagnoses of chronic pain syndrome, low back pain, lumbar degenerative disc disease, and lumbar spondylosis. Tr. 1547. Under "Clinical and laboratory that support your diagnoses," he wrote "MRI," "x-rays," and "history." Tr. 1547. Next to "Are your patients ongoing impairments expected to last at least 12 months," he checked "Yes," and wrote "has already lasted > 12 months." Tr. 1547. Next to "Is your patient a malingerer," he wrote "I don't think so!" Tr. 1547. He opined the primary symptom is "severe low back pain" and the pain is chronic and occurs daily. Tr. 1547–48. Under "Have you substituted medications in an attempt to produce less symptomatology or relieve side effects," he checked "Yes," and listed other treatment as "lumbar fusion" with no complications. Tr. 1548.

From a checklist, Dr. Nalley opined that, in a sustained work environment (eight hours a day, five days a week), Maldonado could perform a job in a seated position for four hours; stand or walk for four hours; must avoid continuous sitting as a medically necessary limitation; must get up from and return to a seated position as tolerated; and would not be required to elevate his legs while sitting. Tr. 1549. Dr. Nalley opined Maldonado could not "lift push pull carry > 10 lb for 4 months <u>after surgery</u>. Then return to activity as tolerated." Tr. 1549. Under "Does your patient have significant limitations in reaching, handling, or fingering," Dr. Nalley checked "No." Tr. 1549. Under "If so, please indicate the frequency with which you[r] patient can perform such activities," he wrote "I'm not treating his hands." Tr. 1549.

Dr. Nalley opined that Maldonado's symptoms would likely increase in a competitive work environment because of chronic pain syndrome and that Maldonado would frequently (between one and two thirds of the day) experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration. Tr. 1550. Dr. Nalley opined that Maldonado would need to take unscheduled rest breaks at unpredictable intervals but could not opine on the length of the breaks. Tr. 1550. Next to, "On average, how often is your patient likely to be absent from work as a result of her/his impairments or treatment," Dr. Nalley wrote, "Don't know." Tr. 1550. Next to, "Do emotional factors contribute to the severity of your patient's symptoms and functional limitations," he wrote, "Uncertain. I'm not a trained psychologist or psychiatrist." Tr. 1550. Under, "In your [b]est medical opinion, do your patient's symptoms and related limitations as detailed in this questionnaire apply as far back as 07/2013," he checked "Yes." Tr. 1550. Under "Factors that precipitate and/or aggravate pain" and "List medication(s) prescribed, dosages and any other side effects your patient has reported," he wrote, "See notes." Tr. 1548.

The second form completed one month later is the same form as the original. This time Dr. Nalley included more information left blank in the first. Only the differences are discussed here. He wrote the date of first treatment as "1/5/2018" and

date of the most recent exam as "4/13/2018." Tr. 1552. For diagnoses, he removed "lumbar degenerative disc disease" and added cervical spondylosis without (probably) myelopathy and cervicalgia. Tr. 1552. Under "Clinical and laboratory that support your diagnoses" he wrote "See clinic notes." Tr. 1552. He now opined the primary symptom was pain (instead of specifying lower back pain) and wrote he treats Maldonado predominantly for cervical spine pain that is constant and increased with heavy activity. Tr. 1553. Dr. Nalley wrote he had prescribed a medication for itching and a post-surgery medication that had already been discontinued. Tr. 1553. This time, he checked "No" instead of "Yes" next to, "Have you substituted medications in an attempt to produce less symptomatology or relieve side effects[.]" Tr. 1553.

Regarding the ability to perform activities in a work environment, Dr. Nalley opined this time Maldonado could sit for between three and four hours and could stand or walk for between one and two hours. Tr. 1554. Dr. Nalley opined Maldonado could frequently lift between zero and ten pounds and could never lift more than that. Tr. 1554. Dr. Nalley apparently intended to indicate the same weight for Maldonado's ability to carry, though a sloppy layout in the form means he checked Maldonado could "occasionally" carry between zero and ten pounds and could never carry more than that. Tr. 1555. This time, Dr. Nalley opined that Maldonado had significant limitations in reaching, handling, or fingering and added that he is not treating Maldonado's wrists. Tr. 1555.

Regarding the frequency of unscheduled rest breaks, Dr. Nalley wrote, "Don't know[.] Chronic pain syndrome & inability to function long period [sic] well pre-dates my treatment of the patient." Tr. 1556. His amended answer to the length of any rest break is unclear; it possibly says, "Don't know[.] Best measured by Functional Expert Evaluator." Tr. 1556. This time, Dr. Nalley opined Maldonado would be absent from work more than three times a month and that he did not think emotional factors contributed to symptoms. Tr. 1556. Dr. Nalley wrote, "Patient presents himself as

rational w[ith] good decision making capacity in my [illegible]. However, I am not trained to make psychological impairment diagnoses." Tr. 1556.

Under "In your best medical opinion, do your patient's symptoms and related limitations as detailed in this questionnaire apply as far back as[] 07/2013," Dr. Nalley still checked "Yes" and added "according to his VA records." Tr. 1556.

The ALJ gave Dr. Nalley's opinions "little weight," explaining:

> I have considered the medical source statements provided by Dr. Charles Nalley, the claimant's treating orthopedic spine specialist at Florida Medical Clinic since January 2018. (Exhibits B23F, B24F) I give these statements little weight, as Dr. Nalley did not begin treating the claimant until several years after the alleged onset date and over a year after the date last insured of December 31, 2016. Nonetheless, Dr. Nalley's assessment of the claimant's exertional functioning as of April 2018 was partially consistent with sedentary work activity and the above [RFC] for the period prior to the claimant's date last insured. I find that Dr. Nalley's statement that the claimant's symptoms and related limitations applied back as far as July 2013 is inconsistent with the medical evidence of record, which reflects that the claimant's symptoms did not exist at this severity at that time or at any point prior to the date last insured, for the reasons discussed[.]

Tr. 29.

Dr. Marquardt saw Maldonado for orthopedic problems and performed the right knee arthroscopy in September 2016. Maldonado returned to see him in November 2016 for a two-month follow-up after his knee surgery. Tr. 820, 844–46. Dr. Marquardt opined, "[I]t is my best medical opinion that Mr. Maldonado is permanently and totally disabled as a result of his multiple musculoskeletal conditions." Tr. 821, 1341.

The ALJ gave Dr. Marquardt's opinion "little weight," explaining:

> I have considered the statement of Dr. Marquardt from November 2016 indicating that it was his best medical opinion that the claimant was permanently and totally disabled as a result of his multiple

19

musculoskeletal conditions. (Exhibits Bl0F, BllF, Bl3F, Bl4F, Bl5F) The record indicates that Dr. Marquardt and the claimant discussed the claimant's functioning specifically in relation to an increase in his VA disability rating. (Exhibit Bl4F) I give this statement little weight, as it is a conclusory statement regarding the claimant's ability to work, and the finding of disability is one reserved to the Commissioner of Social Security. Furthermore, this statement is not supported by the medical evidence of record, which indicates the claimant had examination findings both before and after his most recent knee surgery which indicate he remains capable of a range of sedentary work activity, consistent with the above residual functional capacity.

Tr. 29.

In explaining the weight the ALJ gave to Dr. Nalley's and Dr. Marquardt's opinions, the ALJ gave good reasons (for Dr. Nalley, little weight because of belated treatment after the date last insured and some limitations are consistent with sedentary work but otherwise are inconsistent with the medical evidence showing less severe symptoms during the relevant disability period; for Dr. Marquardt, little weight as a conclusory statement on an issue reserved to the Commissioner and unsupported by the medical evidence). The evidence discussed with regard to the RFC constitutes substantial evidence to support these reasons.

Maldonado contends the "ALJ summarily reject[ed] Dr. Nall[e]y's opinion based solely on the fact that Dr. Nalley did not begin treating the claimant until several years after the date last insured," arguing a treating physician's opinion may still be entitled to significant weight even if the opinion post-dates the relevant time period for disability. Doc. 24 at 27 (quote cleaned up). This argument is unpersuasive. The ALJ did not summarily reject Dr. Nalley's opinion, but credited part of it and rejected the rest not only because of the timing issue but because it was also unsupported by the medical evidence. The second reason alone suffices.

Maldonado contends the ALJ also erred by relying on the state-agency consultant's opinion, citing a case that states the opinion of a non-examining physician alone does not constitute substantial evidence supporting an ALJ's

decision.[6] Doc. 24 at 28. This argument is also unpersuasive. The ALJ did not rely solely on the consultant's opinion to give little weight to Dr. Nalley's and Dr. Marquardt's opinions but gave them little weight because they were inconsistent with the medical evidence. Moreover, the ALJ gave the consultant's opinion only some weight, adding more limitations than the consultant suggested. Remand to reconsider Dr. Nalley's and Dr. Marquardt's opinions is unwarranted.

## V.   Conclusion

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Frank Maldonado under 42 U.S.C. § 405(g) and **close** the file.

**Ordered** in Jacksonville, Florida, on September 30, 2020.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   Counsel of record

---

[6]The ALJ said this about the state-agency consultant's opinion on physical limitations:

I give some weight to State agency reviewing medical consultant Dr. Olga Garcia, who indicated in April 2016 that the claimant was capable of performing sedentary work activity, with occasional postural activity and avoiding even moderate exposure to hazards. (Exhibit B5A) I find that Dr. Garcia's assessment is generally well supported by the then-available medical evidence of record; however, he did not have the benefit of the fully developed record available at the hearing level or the claimant's testimony. Based on the fully developed record, and considering the claimant's subjective complaints insofar as they are supported by the record, and the combined effects of the claimant's impairments, I find that additional limitations are warranted.

Tr. 29.